IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| G & G Closed Circuit Events, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Marisa Mesa, individually and d/b/a Club 520 Nightclub; and The Club Enterprises, LLC, an unknown business entity d/b/a Club 520 Nightclub,<br><br>　　　　　Defendants. | No. CV-20-00470-TUC-JAS<br><br>**ORDER** |

　　　　Pending before the Court is a motion for summary judgment filed by Defendants (i.e., Marisa Mesa, individually and d/b/a Club 520 Nightclub; and The Club Enterprises, LLC, an unknown business entity d/b/a Club 520 Nightclub - collectively, "Defendant" or "Club 520"). Upon review of the parties' motions, responses, replies, statements of fact, opposing statements of fact and supplemental facts, evidence submitted in support of the filings, and pertinent authority, Club 520's motion for summary judgment is denied.[1]

**STANDARD OF REVIEW**

　　　　Summary judgment is appropriate where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those

---

[1] Because the briefing is adequate and oral argument will not help in resolving this matter, oral argument is denied. *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200-1201 (9th Cir. 1999).

"that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).[2] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* Thus, the "mere scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Id.* at 252. However, in evaluating a motion for summary judgment, "the evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

**BACKGROUND**

This case stems from a dispute pertaining to the airing of one boxing match in one commercial establishment on November 2, 2019 (i.e., the Canelo Fight). Plaintiff (i.e., G & G Closed Circuit Events, LLC - "Plaintiff" or "G &G"), owned the exclusive rights to commercial distribution of the Canelo Fight in the United States. On November 2, 2019, Club 520 aired the Canelo Fight, but never received any authorization from G & G to air the Canelo Fight; the cost to obtain authorization from G & G to air the Canelo Fight at Club 520 would have been $1,400.

As Club 520 did not obtain authorization from G & G to air the Canelo Fight, G & G filed this lawsuit alleging violation of the federal anti-piracy statutes (47 U.S.C. §553 and § 605). G & G seeks statutory damages in accordance with 47 U.S.C. §553 and § 605, and attorneys' fees and costs.

As discussed in more detail below, Club 520 primarily argues that there is no liability as: (1) G & G lacks standing as the Master Services Agreement ("MSA") from which G & G derives its commercial distribution rights expired before filing this lawsuit, and G & G does not have proper authorization to pursue this action under the MSA; (2) Club 520 obtained permission to air the Canelo Fight from a broadcaster based in Mexico (i.e., Space Vivo); (3) G & G could have stopped Club 520 from airing the Canelo Fight (but failed to do so and filed this lawsuit instead); and (4) G & G failed to establish the

---

[2] Unless otherwise noted by the Court, internal quotes and citations have been omitted when quoting and citing cases throughout this Order.

exact method of piracy as required by the anti-piracy statutes. G & G filed a controverting statement of facts and opposition briefing arguing that summary judgment should be denied. As there are material issues of facts as to all of the disputed issues in this case, summary judgment is unwarranted as discussed herein.

**DISCUSSION**

*Anti-Piracy Statutes (47 U.S.C. § 553 and § 605)*

As referenced above, G & G seeks statutory damages in accordance with 47 U.S.C. §553 and § 605, and attorneys' fees and costs.

Section 605 forbids the unauthorized reception and broadcast of wire or radio communications and provides for statutory damages of "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). If "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 . . . " 47 U.S.C.A. § 605(e)(3)(C)(ii).

Section 553 forbids the unauthorized reception of cable service and provides for statutory damages of "not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553 (c)(3)(A)(ii). If "the violation was committed willfully and for purposes of commercial advantage or private financial gain" damages may be enhanced by up to $50,000. *See* 47 U.S.C. § 553 (c)(3)(B).

***Standing***

As a threshold matter, Club 520 argues that G & G has no standing to bring this case as the MSA granting G & G the exclusive distribution rights (and rights to enforce them) expired under the terms of the MSA, and G & G otherwise received no proper authorization to bring this case as reflected in the MSA. *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).[3]

---

[3] The Court notes that the parties are familiar with the terms of the MSA, the Standard Terms and Conditions attached to the MSA, and the subsequent Statement of Work ("SOW") that modified the MSA; as such, other than generally referring to pertinent sections of the MSA and relevant SOW, the Court will not exhaustively quote these sections. The Court notes that the MSA and the relevant SOW 4 can be found at Doc. 34-1. For ease of reference, the MSA generally reflects an agreement between one company

Club 520 argues that the MSA terminated on December 31, 2019, and that G & G's right to bring this case expired with the MSA's termination date. Section 8 of the MSA transfers the rights to enforce and prosecute "all acts of alleged privacy" of events from DAZN to G & G until the expiration or termination of the agreement. Section 10 of the MSA states: "[t]he terms of this Agreement shall be for the period commencing on the effective date and ending December 31, 2019 . . . unless extended in writing by mutual agreement of the parties."

Club 520 argues that G & G has no standing because G & G's rights to enforce piracy claims expired on December 31, 2019 - before the case was filed. G & G, in response, points to SOW 4, effective on October 1, 2019. SOW 4 expressly incorporates all terms and conditions of the MSA and if there is any incorporation or contradiction between SOW 4 and the MSA, the SOW prevails. SOW 4 states the terms of the broadcasting of three boxing events, including the boxing match at issue in this case. Notably, SOW 4 states that it also applies to any additional boxing events up until January 30, 2020.

SOW 4 expressly allows G & G to offer a broadcast for DAZN boxing matches prior to January 30, 2020. The SOW additionally provides a rate card for additional events until January 30, 2020. The date in SOW 4 is notably in conflict with the termination date of December 31, 2019 reflected in Section 10 of the MSA. SOW 4 extends the terms of the MSA; SOW 4 is a mutual agreement in writing that extended the termination of the original MSA. Accordingly, there is an issue of fact as to the expiration of the MSA, and summary judgment is denied as to this issue.[4]

---

(DAZN) and another company (G & G) whereby DAZN assigns the exclusive United States commercial distribution rights (and the right to enforce those rights) to the Canelo Fight to G & G. The MSA and SOW 4 (*see* Doc. 34-1) contain various terms and provisions that are referenced herein as relevant to the parties dispute.

[4] The Court notes that a U.S. District Court in California denied summary judgment regarding the same contractual expiration argument arising in this case (i.e., relating to the same November 2, 2019 Canelo Fight and it pertained to the same underlying contractual documents at issue in this case). *See G & G Closed Cir. Events, LLC v. California Ctr. for the Arts, Escondido, Found.*, 2022 WL 598059, at *4 (S.D. Cal. Feb. 28, 2022). The Complaint in *California Ctr.* was also filed on the same date as the Complaint in this case (i.e., 10/30/20).

Club 520 also argues that Paragraph 8(b) of the MSA requires that G & G provide written notice to DAZN and written consent from DAZN prior to bringing an enforcement action such as the case at bar.  However, the record is disputed as to whether DAZN and G & G waived this provision.  Furthermore, Club 520 appears to be asserting unenforceable third-party beneficiary rights to enforce Paragraph 8(b), and there is no indication of the contracting parties' intent to allow third parties such as Club 520 to assert such rights.  As there is an issue of fact, summary judgment is denied.

### *Latin American Broadcaster (Space Vivo)*

Next, Club 520 argues that it obtained the Canelo Fight via a Latin American Broadcaster (i.e., Space Vivo), and therefore G & G's rights were never violated.

However, as G & G correctly argues, G & G had the exclusive rights to broadcast the Canelo Fight in the United States.  As such, given the strict liability of the piracy statutes in question, and the fact that Club 520 did not receive authorization to broadcast the Canelo Fight from G & G at Club 520 located in the United States, Club 520 can be held liable as G & G was the exclusive licensee in the United States.  *See*, *e.g.*, *G & G Closed Cir. Events, LLC v. Alcantara*, 2021 WL 1222170, at *3 (D. Ariz. 2021) ("To the extent that defendants argue that their alleged subscription to SKY Television [a broadcaster based in Mexico] is evidence that there were other legal providers of the Program in the United States, this argument fails. Defendants did not produce evidence that SKY Television was permitted to show the Program in the United States, or even that they had a valid subscription."); *J & J Sports Productions, Inc. v. Rubio*, 2017 WL 3234939 (D. Ariz. July 31, 2017) ("The fact that defendant may have somehow legally purchased a Sky Television subscription—a fact that is far from established—does not immunize them from liability for broadcasting the event to the Tacos El Grullo patrons without obtaining authorization from plaintiff, the exclusive licensee."); *G & G Closed Cir. Events, LLC v. Gonzalez*, Case No. 18-cv-02843-PHX-SMB (D. Ariz. Feb. 21, 2020)(Dkt. No. 44 at *8) (Pltf. Ex. 6) ("[e]ven assuming a valid Sky Television subscription existed on the date in question, defendants remain liable for broadcasting the Fight to customers at Taco Mich &

Bar without permission from G & G, the exclusive licensee for the United States."); *see also* MSA at 5, ¶ 8.a ("Licensee shall have the right to . . . prosecute any and all acts of alleged piracy of the Events, regardless of the means of transmission (i.e., international broadcasts, internet streaming . . . etc."). Summary judgment is denied as to this issue.

### *Failure to Stop the Canelo Fight by Club 520's Investigator*

Club 520 also argues that the private investigator ("PI") paid by G & G could have and should have prevented the airing of the Canelo Fight at Club 520. Club 520 argues that the PI was aware that Club 520 did not have authorization from G & G to air the Canelo Fight at Club 520, that the PI was present when the Canelo Fight began airing at Club 520, but the PI never said anything whatsoever to anyone at Club 520 indicating that they were illegally airing the Canelo Fight in violation of G & G's exclusive broadcast rights in the United States. Nevertheless, even accepting these circumstances as true, it does not absolve Club 520 of liability as other courts have found liability in similar circumstances. *See J & J Sports Prod. Inc. v. Patin*, 358 F.Supp. 3d 318, 323 (S.D.N.Y. 2019) ("The pleadings make clear that after the auditor [i.e., private investigator] had determined that Patin was a likely prospective violator who planned to broadcast the Program, he attended the broadcast for the purpose of verifying the violation and obtaining evidence of its circumstances. As Patin herself alleges, he was there to lay the foundations for the lawsuit, and to provide to J & J an affidavit which documented the unauthorized reception . . . That is inconsistent with any consent or acquiescence by J & J in the unlawful broadcast; it rather establishes a coherent and unwavering plan to identify, verify, and prosecute the illegal interception and broadcast."); *Joe Hand Promotions, Inc. v. Havens*, 2013 WL 3876176, at *3 (S.D. Ohio July 26, 2013) ("[h]ere, the alleged violation, i.e., the alleged unauthorized interception and publication of the Program, occurred on February 26, 2011. Put simply, plaintiff had no 'reasonable opportunity to discover the violation' until that date."). Summary judgment is denied as to this issue.

### *Method of Interception*

Lastly, Club 520 argues that G & G has failed to establish the exact method that the

Canelo Fight signal was intercepted – via cable system, in violation of 47 U.S.C. § 553, or via a satellite transmission, in violation of 47 U.S.C. § 605.  While liability cannot simultaneously attach under both § 553 and § 605, and G & G will eventually have to establish the method of interception at trial, that is not necessary to survive a motion for summary judgment; rather, all that is required at this stage is for G & G to establish its exclusive rights to broadcast the Canelo Fight in the United States, Club 520's lack of authorization to air the Canelo Fight at its commercial establishment, and that the airing of the Canelo Fight in question potentially violates one of the statutes in question – as reflected above, Club 520 has created an issue of fact as to these issues.[5]  *See Joe Hand Promotions, Inc. v. Jorgenson*, 2013 WL 64629, at *4 (E.D. Wis. Jan. 4, 2013) ("the violation itself—and not the method of violation—is enough to proceed [past summary judgment'."); *see also Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293*, 161 F. Supp.3d 910, 918 (E.D. Cal. 2016), ("[t]he lack of authorization and defendant's satellite service" is sufficient to establish a violation of § 605); *G & G Closed Cir. Events, LLC v. Alexander*, 2020 WL 1904628 (D. Ariz. Apr. 17, 2020) (finding liability under §605 and holding that "i[t] does not matter that defendants obtained the programming by pulling it from an internet source rather than by, for example manipulating hardware or using a counterfeit access card."); *DirecTV v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("The law does not require direct evidence to support a factual finding. Circumstantial evidence may be sufficiently persuasive. Signal piracy is by its nature a surreptitious venture and direct evidence of actual interception may understandably be hard to come by . . . For this reason, courts have correctly concluded that direct evidence of signal piracy is not required to prove unlawful interception.").  Summary judgment is denied as to this issue.

**CONCLUSION**

Accordingly, upon review of the pertinent record and authority, IT IS ORDERED as follows:

(1) Club 520's motion for summary judgment is denied.

---

[5] The Court notes that the PI appeared to identify a satellite associated with Club 520 and that an affidavit reflected that the Canelo Fight could have been an illegal stream.

1  (2) The parties shall file their proposed Joint Pretrial Order and motions in limine as
2  reflected in the Court's Scheduling Order. *See* Doc. 17 at p. 5.  The Court notes that
3  the parties may benefit from a settlement conference before they proceed further
4  with this case; at the request of the parties, the Court can refer this case to a United
5  States Magistrate Judge for a settlement conference at no cost to the parties.  If the
6  case is referred for a settlement conference, the Court will stay all deadlines pending
7  the results of the settlement conference.

Dated this 25th day of January, 2023.

*[signature]*

Honorable James A. Soto
United States District Judge